# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL FOSTER,** | : | **Case No. 1:04 cv 1032** |
| | : | |
| **Plaintiff (*Pro Se*),** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **GERALD T. McFAUL, *et al.*,** | : | **ORDER** |
| | : | |
| **Defendants.** | : | |

Numerous matters are pending in this case, the most recent of which are the Defendants' two motions for summary judgment and the Plaintiff's Rule 56(f) motion.  In sum, the Plaintiff's motion requests that the Court forego consideration of the Defendants' summary judgment motions because a variety of discovery issues remain unresolved.  These unresolved discovery issues account for the bulk of the pending matters and the *voluminous* filings by the parties.

For the reasons outlined briefly below, and in large part because the Defendants have not opposed it, the Plaintiff's Rule 56(f) motion (Doc. 144) is **<u>GRANTED</u>**.  The Defendants' two summary judgment motions (Docs. 126 and 127) are hereby **<u>TERMED</u>** <u>without prejudice</u>;  they may be <u>re-filed</u> (in their original or amended form) no later than thirty (30) days after the completion of the extended discovery period outlined in this Order.  The Court also resolves herein the numerous discovery issues raised by the Plaintiff, and outlines the parameters of the limited discovery period granted by this Order.

## I.    **BACKGROUND**

This case has a long and tired history of discovery disputes, each of which has been complicated by the fact the Plaintiff is acting *pro se* and is currently in prison.  Based on the Court's prior interactions with the parties, it is evident that both sides have acted unreasonably on one or more occasions – whether by making repeated unreasonable requests (Plaintiff) or, at times, providing unreasonable responses (Defendants).  The Court has expended a considerable amount of time responding to, or otherwise resolving, a variety of unnecessary disputes.  Often, such resolution has required the Court to parse line-by-line through discovery requests and make individualized rulings – only then to have the parties come back to the Court to argue whether a party has complied with the Court's individualized determinations.  As will be evident from the Court's review of the current disputes, the bulk of them fall into this category.

By virtue of these many interactions, the Court has admonished the parties to be more reasonable in their discovery efforts so as to minimize the need for judicial assistance.  While the Court certainly is willing to engage in individualized assistance under appropriate circumstances, parties are not entitled to monopolize the Court's time – which operates to the detriment of other litigants – by acting unreasonably during the discovery process and thereby demanding "hand holding" attention.

Principally, and with some success, the historical disputes in this case have been raised by the Plaintiff.  Early on, the Plaintiff wrote *numerous* letters to the Court alleging discovery abuses by the Defendants.  Apparently having convinced one of his supervising corrections officers to place phone calls to the Court for him, the Plaintiff also contacted the Court by phone on many occasions to voice

2

his concerns, though that privilege seemingly was removed. *See* Doc. 82.[1]  Per its normal procedures, and others specially crafted for this case (*see* Doc. 94), the Court resolved the parties' many disputes as they arose – sometimes informally over the phone, and sometimes formally *via* a written order or on-the-record conference call (or both).

While it is clear that the Plaintiff is not shy about voicing concerns (both reasonable and unreasonable concerns alike), the Court has found some of the Plaintiff's prior concerns to be well-taken.  Indeed, the Court has determined on several occasions that the Defendants' discovery responses have been deficient.[2]  In other words, all parties' discovery-related conduct has been less than perfect throughout this litigation.  Fault issues aside, however, the parties' conduct has generated an unreasonable number of discovery-related filings, most (if not all) of which the Court should never have had to address.  Despite this background, the disputes continue.

The Court's last *formal* resolution of discovery-related issues was *via* an on-the-record telephonic conference with the parties.  Following that conference, the Court issued an Order (Doc. 72) summarizing its rulings (on other issues as well) and *narrowing* the scope of future discovery.  With regard to discovery, the Court's Order provided that the Defendants did not need to respond to any outstanding discovery, but should review and supplement any prior discovery responses, as appropriate.  It then provided the Plaintiff with several *limited* mechanisms to finalize his discovery efforts.  In part,

---

[1]     The Court received many calls (or voice mail messages) from a corrections officer at the Marion Correctional Institution .  In the interests of justice and efficiency, the Court always returned Plaintiff's calls.

[2]     While the Defendants' frustration with Plaintiff's continual, far-reaching, demands has often been understandable, Defendants may have been able to prevent escalation of these discovery disputes by being generous in their approach to their discovery obligations.  Defendants chose not to do so.

3

the Order specifically provided:

- ***Defendants shall within ten (10) days of the date of this Order provide written notice to the Court and Plaintiff as to their ability to locate, compile and produce the medical and housing log books*** for the Cuyahoga County Jail for the approximately two (2) month period relevant to the Plaintiff's claims in this action.  Defendants shall make every effort to locate and produce these documents, in redacted form, if appropriate;

- ***Defendants do not need to respond to any still outstanding discovery requests*** contained in Plaintiff's second set of Requests for Admission and Document Requests.  The parties agreed, however, that ***Plaintiff may submit a letter to Defendants' counsel asking for very specific items, even if those items otherwise fall within the bounds of Plaintiff's second set of discovery requests***.  Defendants' counsel agreed, and is hereby ordered, to make every effort to produce those specific items to Plaintiff;

- Henceforth, Plaintiff's discovery is limited only to a total of <u>ten (10) additional requests for the production of documents</u>.  These requests may be directed to more than one Defendant, when appropriate.  Plaintiff is prohibited from serving any interrogatories or additional requests for admission [*via* Doc. 75, the Court adjusted this limitation to permit the Plaintiff to serve no more than fifteen interrogatories on each Defendant];

- ***Defendants immediately shall review*** their prior responses to Plaintiff's previous discovery requests (*i.e.*, the first set of requests for admission and production of documents) ***and supplement any deficiencies*** within twenty-one (21) days of the date of this Order; and

- ***After having received and reviewed Defendants' supplemental responses*** (if any are provided) and discussed any perceived deficiencies with Defendants in an effort to resolve any conflict without Court intervention, ***if Plaintiff believes Defendants' responses are inadequate, he may file a list of the requests and responses in question for review by the Court***.

*See* Doc. 72 at pp. 1-2 (bold and italics added).  Per the Order, the Defendants filed a status update (Doc. 74) indicating that certain of the medical and housing log books had been located and would be copied and produced to Plaintiff.

Rather than having a "winding-down" effect on the discovery process, however, a new batch of discovery-related filings followed the Court's Order, not the least of which was a motion for sanctions (Doc. 83) against Defendants McFaul and McDonough (and their counsel) for allegedly

4

giving false responses to the Plaintiff's requests for admissions.  Due to the Court's heavy trial calendar, and with the hope that additional private efforts between the parties would lead to a resolution, the Court refrained from addressing the parties' filings immediately.  During that delay, the parties continued to file dispute-related motions and other papers.  Yet again, despite its efforts to streamline the process, the Court was inundated with a large volume of filings.  Upon collective consideration of those filings, it is apparent that these ongoing disagreements continue to stem from the parties' unwillingness to work together.

As the post-Order discovery issues accumulated, which included a motion for a 60-day extension of the discovery cut-off deadline, the Defendants filed summary judgment motions  (Docs. 126 and 127).  Though he acknowledged that discovery issues remained unresolved, the Plaintiff substantively responded to the Defendants' motions, arguing that they are premised on distortions of the evidence and that material factual issues exist.  Rather than focus on the absence of information, the Plaintiff attempted directly to address the Defendants' arguments in support of summary judgment.  Sometime later, perhaps unaware that the motion could have been filed in the first instance, the Plaintiff filed a Rule 56(f) motion requesting that the Court disregard the summary judgment motions (for now) given that information has not yet been produced that would greatly assist his effort to demonstrate the existence of genuine issues of material fact.  In sum, he simply argued that too many discovery issues remain outstanding for the Court to consider the Defendants' motions.  As if to agree, the Defendants have not opposed the Plaintiff's Rule 56(f) motion.

## II.  **DISCUSSION**

Though the "outstanding discovery issues" upon which the Plaintiff bases his Rule 56(f) motion are not as expansive as he describes, and exist in large pat due to the parties' misapplication of the

Court's Order, they nevertheless support granting the motion.  This is especially appropriate in light of the Defendants' failure to respond.  As such, the Court need not engage in a lengthy Rule 56(f) analysis. The bulk of the Court's attention, therefore, is directed to the outstanding discovery issues, which the Court also summarizes and resolves below.

    **A.**    **Plaintiff's Rule 56(f) Motion (Doc. 144) and Defendants' Summary Judgment Motions (Docs. 126 and 127).**

As noted above, Plaintiff argues that the Court cannot adequately assess the Defendants' summary judgment motions until the discovery issues outlined in the Plaintiff's many filings are resolved.  More importantly, the Plaintiff argues that his ability to combat the Defendants' motions is severely hampered by the absence of the information to which he claims he is entitled.  Certain of the Plaintiff's "disputes" (though not all) present legitimate concerns and warrant additional limited discovery.

Given these concerns, the relevance certain not-yet-produced information may have, and the Defendants failure to oppose the Plaintiff's Rule 56(f) motion, caution instructs the Court to set the summary judgment motions aside pending completion of <u>limited</u> additional discovery.  Certainly no harm can flow from a "without prejudice" termination of the motions.  Accordingly, the Plaintiff's Rule 56(f) motion shall be <u>granted</u> and the Defendants' summary judgment motions shall be <u>terminated without prejudice</u>, subject to refiling pending completion of discovery <u>as defined in this Order</u>.

    **B.**    **The Pending Motions and Disputes**

The Plaintiff's discovery-related filings fall into three general categories:  (1) the motion for sanctions alleging false responses to Plaintiff's requests for admissions; (2) discovery disputes flowing from the Court's narrowing Order (Doc. 72); and (3) general discovery disputes (*e.g.*, logistical issues

due to the Plaintiff's incarceration and lack of financial resources).  With these categories in mind, the Court addresses each of the outstanding disputes below.

      1.     ***Plaintiff's Motion for Sanctions*** (**Doc. 83**) **and** ***Plaintiff's Supplemental Motion for Sanctions*** (**Doc. 130**).

Plaintiff's motion for sanctions (and supplement), brought pursuant to Rule 37(c)(2), relates only to Defendants McFaul and McDonough, and their counsel.  In sum, Plaintiff argues that these Defendants' responses to his requests for admissions are rife with false and misleading information.  Plaintiff attaches various documents – obtained through discovery and other sources – in support of his allegations.  In sum, the motion outlines approximately thirty-five responses the Plaintiff claims are patently false or misleading.

In response, the Defendants initially argue that the motion should be denied because the Defendants were not properly served with the exhibits to the motion.  This issue has been mooted by a prior order directing the Plaintiff to serve the Defendants with all filings in conformity with Rule 5 (Doc. 95).  As to the substance of Plaintiff's allegations, the Defendants directly respond to only two of the thirty-five items the Plaintiff identified – undoubtedly the two the Defendants think are the weakest.  The Defendants also argue that the motion is procedurally flawed because Rule 36(a) requires the Plaintiff first to file a motion "challenging the sufficiency" of the Defendants' answers, as opposed to seeking sanctions.

Not surprisingly, neither party here is perfectly innocent.  Whether *via* Rule 36 or Local Rule 37 (*i.e.*, the discovery dispute procedures), Plaintiff first should have approached the Court with these discovery-related issues before seeking sanctions.  That notwithstanding, as with all disputes that have been raised in the past, the Court looks to the heart of the issues presented.  In this instance, the

procedural irregularities identified by the Defendants do not justify a complete disregard of the substance of the Plaintiff's motion.  Based on a review of the Defendants' responses and the various attachments to the motion, it appears that many of the Plaintiff's accusations *may* have merit, a point bolstered by the fact the Defendants responded in substance to only two of the thirty-five deficiencies alleged.  Further, the Defendants' argument that these issues should be resolved at some time closer to trial "when the relevance of any such issues [*i.e.*, deficiencies in admission responses] can be more readily determined" is unpersuasive.  Doc. 93 at 3.  This argument completely avoids the issue of whether denials, which turn not on a requests' relevancy, clearly are inaccurate.

Having reviewed the various requests and responses outlined in the Plaintiff's motion, as well as the documents attached to the motion in connection therewith, the Court **FINDS** that at least some, but not all, of Plaintiff's allegations *appear* to have merit.  Rather than engage in line-by-line analysis of those items, and in light both parties' failure properly to assert and respond to those issues,[3] the Court deems it a fair and efficient compromise to require  Defendants McFaul and McDonough to reconsider the requests for admission at issue and provide supplemental (*i.e.*, new) responses thereto.

Accordingly, Plaintiff's motion is **GRANTED in part and DENIED in part**.  As it relates to the Plaintiff's acquisition of supplemental responses to his requests for admission, the motion is granted.  As it relates to sanctions, the motion is denied.  Defendants McFaul and McDonough **SHALL**

---

[3]     In challenging the procedural propriety of the Plaintiff's motion, and as if to justify the absence of any substantive response to the Plaintiff's litany of allegations, the Defendants request that the Court inform them as to whether it will consider the Plaintiff's motion as a motion brought pursuant to Rule 36.  The Court does not view that qualifying request as justification to avoid a more thorough substantive response to the Plaintiff's claims, especially in light of the fact the Defendants chose substantively only to respond to two of the Plaintiff's claims.

**RECONSIDER** the requests for admission at issue (with specific attention to the materials presented by the Plaintiff) and, **within twenty (20) days of the date of this Order, PROVIDE** supplemental (*i.e.*, new) responses to those requests.

    2.       **Discovery Disputes Following the Court's August 12, 2005 Narrowing Order.**

As previously stated, the Court's prior Order sought to narrow the scope of both past and future discovery.  Intentionally or otherwise, the parties – principally the Plaintiff – have misapplied that Order, thereby generating a new set of unnecessary disputes.  In the months following the Order, the following items were filed:

    •    *Plaintiff's List of the Requests and Responses in Questions for Review by the Court* (Doc. 96);

    •    *Plaintiff's Request to Inspect Original Documents, i.e., Log Books in the Possession, Custody and Control of Defendants* (Doc. 98);

    •    *Plaintiff's Supplemental Discovery Dispute Letter of August, 2005* (Doc. 124); and

    •    *Second Discovery Dispute Letter, Plaintiff's List of the Requests and Responses in Question for Review by the Court* (Doc. 138).

Considering these items in conjunction with the Court's Order (Doc. 72), the Court first clarifies the procedure it previously established and then outlines the manner in which limited discovery will proceed to effectuate that procedure (for a second time).

As outlined above, the Court's prior Order resolved three primary aspects of then-outstanding discovery.  As to the Plaintiff's <u>first</u> set of discovery requests, the Order required the Defendants to review their responses and, to the extent necessary, supplement them.  <u>As to any supplementation</u> (but not the original requests), the Order provided that the Plaintiff could grieve perceived deficiencies.

9

As to the Plaintiff's second set of discovery requests, the Court concluded that the Defendants had complied with their production obligations.  The Order required the Defendants, however, to produce, if possible, any "specific items" Plaintiff would identify in a letter that was to follow the Order, even if the items arguably were covered by one of the Plaintiff's prior discovery requests.  In doing so, the Order provided the Plaintiff with a tailored discovery mechanism while seeking to protect the Defendants from continued vague and/or overbroad requests.

Finally, the Order (and a subsequent clarification order – Doc. 75) authorized limited additional discovery.  In sum, it authorized the Plaintiff:

(1)     to propound a total of ten additional document requests (directed to more than one Defendant, when appropriate); and

(2)     to propound fifteen (15) interrogatories on each Defendant.

The Order specifically prohibited any additional requests for admission to be propounded by the Plaintiff.

On August 19, 2005, the Plaintiff sent a letter to Defendants' counsel identifying, among other things, two numbered lists of "document requests" for both McFaul and McDonough.[4]  Almost two months later, the Defendants responded, but only to the first ten items in Plaintiff's lists – *i.e.*, all eight of the items relating to McDonough and the first two items relating to McFaul.  Defendant ignored the remaining eight items relating to McFaul and the rest of the letter, citing the Order's limitation of a total of ten additional document requests.  That response set off the filing campaign.

*Plaintiff's List of the Requests and Responses in Questions for Review by the Court* (Doc. 96)

---

[4]     Plaintiff's letter identified eight (8) items for McDonough followed by ten (10) items for McFaul.

10

outlines fifteen (15) requests / items to which the Defendants have not responded.  Plaintiff complains that the Court's Order required the Defendants to produce these "specific documents."  Seemingly, the Plaintiff *initially* takes the position that his requests fall under the "specific items" provision of the Court's Order.  In response to the Defendants' argument that the "document request limitation" (*i.e.*, to a total of ten) governs the requests in the Plaintiff's August letter, the Plaintiff shifts his focus and argues that certain of the numbered items were "new" and certain of them were "old," but not yet responded to.  *See Plaintiff's Supplemental Discovery Dispute Letter of August, 2005* (Doc. 124).[5]  As such, and seemingly abandoning the suggestion that his requests fell under the "specific items" provision of the Court's Order,[6] the Plaintiff argues that only the "new" requests should count against the "ten document request" limitation and that the Defendants should be compelled to respond to the old requests.

Clearly, the items identified in the Plaintiff's August 19, 2005 letter constitute "document requests" subject to the Court's "ten document request" limitation.  That limitation provided for a <u>total</u> of ten additional requests, not ten requests per Defendant.  As such, the Defendants were only obligated to respond to the first ten requests, which they did.  The Plaintiff's view that certain of the requests should not count against the limitation is unpersuasive.  First, if the Plaintiff wished to differentiate the requests in that manner (*i.e.*, old and new requests), he should have done so in his letter.  Regardless, however, the Defendants were relieved of any production obligations *vis-a-vis* the "old" requests by the

---

[5]     Plaintiff argues that his "new" requests are items 2, 6, 7, 11, 12, 13 and 14, as set forth in Doc. 96.  He argues that items 1, 3, 4, 5, 8, 9 and 10 are "outstanding requests."  Plaintiff makes no mention of item 15.

[6]     Apparently, in addition to the letter identifying "document requests" for both McFaul and McDonough, the Plaintiff sent a letter identifying "specific items," as contemplated by the Court's Order.

Court's narrowing Order, so the distinction is immaterial.  The only obligation the Defendants had in connection with the "old" requests was to supplement them, if necessary.  Plaintiff does not complain of deficiencies in any supplemental responses (at least not in these filings); rather, he continues to assert general deficiencies as to the original requests.  That issue was previously resolved, however, and the Court refuses to revisit it.[7]  <u>Defendants shall, however, respond to any outstanding interrogatories – subject to the Order's limitations.</u>

Plaintiff does purport to complain of "supplementation" deficiencies in his *Second Discovery Dispute Letter, Plaintiff's List of the Requests and Responses in Question for Review by the Court* (Doc. 138).  In that filing, the Plaintiff asserts that, based on supplemental documents produced by the Defendants, it is apparent that additional items responsive to the Plaintiff's original requests remain outstanding.  Having reviewed the narrative in that filing, which essentially argues that documents "must exist" that have not been produced, the Court is unpersuaded.  Given the Court's directive herein that the Defendants "re-respond" to the Plaintiff's original requests for admission, many of the issues touched upon in this filing will be addressed again by the Defendants.  Regardless, as the Court has explained to the Plaintiff in the past, the Defendants cannot produce that which does not exist – or, at least, that which the Defendants represent to this Court does not exist.  Defendants' principle response to the Plaintiff's repeated discovery requests has been that they have provided all they have.  At least with regard to these issues, the Plaintiff has not presented sufficient evidence that documents are being withheld.  At best, this filing merely reargues the Plaintiff's ongoing belief that the Defendants have not adequately responded to his discovery requests.

---

[7]     As to the Defendant's complaint that the Defendants have failed to produce an original of the Defendants' "4 in, 4 out" policy, the Plaintiff is not entitled to the original.

Finally, *Plaintiff's Request to Inspect Original Documents, i.e., Log Books in the Possession, Custody and Control of Defendants* (Doc. 98) claims that the "copies" of certain log books produced by the Defendants are either incomplete or have been altered.  Plaintiff requests that the Defendants produce the original log books for his review.  Defendants oppose this request arguing that the Plaintiff is not entitled to the originals, nor is there any practical way to provide them to the Plaintiff given his incarceration and their volume.  If this issue remains outstanding,[8] the parties may address it to Magistrate Judge Baughman during the 90-day extended discovery period, at which time he may determine whether an *in camera* production of the original log books and the copies is appropriate to resolve the allegation that alterations exist.

### 3.    General Discovery Disputes

Beyond the specific disputes identified above, which relate solely to outstanding written discovery, Plaintiff has filed several other  motions (relating primarily to deposition discovery).

>    •    ***Plaintiff's Motion for Extension of Time Regarding Completion of Discovery (Doc. 103).***

Plaintiff seeks an extension of the discovery deadline so that he can take depositions.  As an explanation for his delay in proceeding with the many depositions he anticipates (more than ten), the Plaintiff states that he has been "holding off" because he has yet to receive the documents necessary for him adequately to prepare for such depositions.  Plaintiff further claims that he is indigent an unable to pay for such depositions and cannot proceed absent a Court order assisting him in that regard (this issue is further discussed below).  Defendants oppose any extension arguing that, because the they have

---

[8]    The Defendants indicate that they intended to follow-up with the Plaintiff on this issue.  It is unclear whether such efforts took place or successfully resolved the matter.

13

complied with all discovery and the public is not obligated to fund Plaintiff's prosecution of his case, an extension of the discovery deadline for depositions is unnecessary.

Given the Court's determination above that limited additional written discovery is appropriate, the discovery deadline must be extended in any event.  Accordingly, Plaintiff's motion is **GRANTED**. Subject to the substantive limitations outline herein (*i.e.*, as to scope), the discovery deadline is hereby **EXTENDED for 90 days** from the date of this Order.

- ***Defendants' Motion for Order Shortening the Time for Serving Cross-Questions for the Written Deposition of Donald Butler (Doc. 92).***

This motion has been rendered moot because the time for serving cross-questions in connection with the Butler deposition, as defined by the Federal Rules of Civil Procedure, has already expired.  In so far as the Court has not been informed that any additional disputes have arisen in connection with the written deposition of Donald Butler, the Court assumes that deposition is completed.  Accordingly, Defendants' motion is **DENIED as moot**.

- ***Plaintiff's Motion to Convey (Doc. 107)*** **and** ***Plaintiff's Motion for Appointment of a Court Reporter for the Taking of Depositions (Doc. 90).***

In these two related motions, Plaintiff's requests:  (1) that he be taken to the Cuyahoga County Jail to conduct depositions of the Defendants and other non-party witnesses who work at that facility; and (2) that the Court appoint (and pay) a court reporter for all of the Plaintiff's depositions.  Plaintiff has indicated in his filings that he wishes to take *at least* fourteen (14) depositions.  Defendants oppose both of these motions.  As to the first, they principally argue that it would be inappropriate for the Plaintiff to conduct depositions – assuming he can – at the Cuyahoga County Jail, where the individual Defendants still hold responsible positions.  As to the second, the Defendants simply argue that the

Plaintiff – just like any other civil litigant – must pay for the prosecution of his case.

Plaintiff's motions are **DENIED**.  To the extent any oral depositions go forward, they shall take place at the Plaintiff's place of incarceration.  With regard to the costs of such depositions, the Defendants correctly observe that the Plaintiff is no different than any other civil litigant with regard to his ability – or inability – to afford the prosecution of his case.  Financial accommodations provided by the Court to indigent *pro se* parties is limited to waiver of Court fees (*e.g.*, filing fees), but does not extend to general litigation costs.  As with any civil litigant, if the Plaintiff is financially unable to prosecute his case, prejudice that may flow from that inability rests with him alone.

At his own expense, Plaintiff shall be permitted to conduct no more than ten (10) depositions (oral or otherwise) during the 90-day extension granted herein.[9]  To the extent the Plaintiff cannot afford to pursue oral depositions, he may seek deposition testimony – subject to the <u>time and scope limitations</u> outlined herein – by other means under the Federal Rules of Civil Procedure  (*e.g.*, depositions upon written questions *via* Rule 31).  Plaintiff's discovery efforts in this regard shall be limited to his claims that the Defendants failed adequately to protect him (as a protective custody inmate) and/or provide adequate medical care during his stay(s) at the Cuyahoga County Jail, which led to the injuries he alleges.  For reasons articulated in the past, Plaintiff is not permitted to engage in wholesale discovery

---

[9]        Though Plaintiff references in his many filings his desire to depose at least fourteen individuals, he has not sought leave to take that many depositions under Federal Rule of Civil Procedure 30(a)(2)(A), <u>which limits the number of depositions</u> a party may take "without leave" <u>to ten</u>.  Given the Court's prior finding that the heart of Plaintiff's case relate to his claims that the Defendants failed adequately to protect him from physical attacks by other "general population" inmates, ten depositions are more than sufficient.  The Court will not entertain a motion under Rule 30(a)(2)(A) for additional depositions.  As outlined above, the Plaintiff is not permitted to expand discovery to issues relating to general claims of inadequate conditions (other than those relating to medical care) within the facilities where the Plaintiff has been housed.

15

relative to his general allegations that conditions of confinement at the Cuyahoga County Jail are inadequate.  As the Court has previously discussed with the parties, the heart of the Plaintiff's case relates to his claim that the Defendants' conduct led to the Plaintiff being assaulted and not treated appropriately thereafter for injuries from that assault.  The discovery the Court graciously authorizes herein shall, therefore, be limited to those issues.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Rule 56(f) (Doc. 144) is **<u>GRANTED</u>**.  The Defendants' two summary judgment motions (Docs. 126 and 127) are hereby **<u>TERMED without prejudice</u>**.  The summary judgment motions may be <u>re-filed</u> (in their original or amended form) no later than 30 days after the completion of the discovery period outlined in this Order.  Briefing on those motions, if re-filed, shall proceed pursuant to the time frames established by the Federal Rules of Civil Procedure.  **<u>The various discovery-related motions (or other filings) are resolved as outlined above and here hereby TERMED</u>**.

This case is **<u>REFERRED</u>** for pre-trial supervision to Magistrate Judge Baughman.  With the above admonitions in mind, any disputes that may arise during the limited extended discovery period shall be directed to Magistrate Judge Baughman.[10]  This referral also pertains to any timely-filed motions, dispositive or otherwise.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  September 11, 2006**

---

[10]    All of the Court's prior orders relative to the form and content of such disputes remain in full force and effect.